UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| JAMES HENDRIX, and JAMES SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:09-cv-99-SEB-DML |
| vs. | ) | |
| | ) | |
| MAURY PLAMBECK, in his official | ) | |
| capacity as CITY OF INDIANAPOLIS, | ) | |
| DIRECTOR OF METROPOLITAN | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Motion for Summary Judgment [Docket No. 30] filed on September 30, 2009, by Defendant, Maury Plambeck, in his official capacity as Director of Metropolitan Development for the City of Indianapolis ("the DMD"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs James Hendrix and James Smith brought their claims pursuant to 42 U.S.C. § 1983, seeking relief under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, for the alleged wrongful taking of their property, for violations of their procedural and substantive due process rights, and their right to be free from illegal search and seizure. Plaintiffs also claim they have been denied the right to have their possessions secure from unlawful searches and seizures, as guaranteed by Article I § 11 of the Indiana Constitution, and that they have been denied compensation for the taking of their

property, in violation of Article I § 21 of the Indiana Constitution.  For the reasons

explicated below, Defendant's Motion for Summary Judgment is hereby <u>GRANTED</u>.[1]


**<u>Factual Background</u>**

The parties' dispute centers around the condemnation and eventual demolition of a

commercial building located at 1409 East Washington Street, Indianapolis, Indiana ("the

Building").  On June 25, 2007, Long Nguyen and William Chappell, both engineers with

the Indianapolis Department of Public Works ("DPW"), as part of their inspections of

several structures in Indianapolis, examined the subject property, where they discovered a

collapsing roof on a concrete block addition near the rear of the Building.  (Def.'s Ex. A ¶

4).  Following the initial discovery of the conditions of the structure, representatives from

the DMD's Division of Compliance joined Mr. Nguyen and Mr. Chappell in inspecting

the premises and agreed that portions of the Building were unsafe.  Robert Laughlin, a

Building Inspector with the Office of Code Enforcement, subsequently placed an unsafe

building placard on the Building.  Affidavit of Robert Laughlin ("Laughlin Aff.") ¶ 15. At

---

[1] On December 4, 2009, Defendant moved to strike Plaintiffs' filing entitled Response to Defendant's Reply in Support of His Motion for Summary Judgment [Docket No. 38], arguing that the document is in fact a surreply, and, as such, in violation of Local Rules because it is untimely and neither presents new evidence nor responds to new evidence presented by Defendant.  Plaintiffs filed no response to Defendant's motion.  We hereby <u>GRANT</u> Defendant's Motion to Strike as to the material included under the headings numbered two (2) through six (6) in Plaintiffs' surreply because those paragraphs merely rehash arguments set forth in Plaintiffs' response brief and do not address new issues raised in Defendant's reply brief.  However, we <u>DENY</u> Defendant's motion as to Plaintiffs' argument set forth under the heading numbered one (1) in their surreply, which addresses the evidentiary objection Defendant raised in his reply.

the time the Building was first inspected, the property was owned by Darlene Ramsey.

On July 18, 2007, Mr. Laughlin discussed with Plaintiff James Smith[2] DMD's concerns over the safety of the building, informing Mr. Smith of the steps that would need to be taken in order to abate the unsafe structure.  Mr. Laughlin informed Mr. Smith that if he intended to repair the Building's defects, he (Smith) would need to engage a project engineer to conduct an independent review and propose a plan for abating the immediate danger accompanied by engineering drawings and an application for the appropriate permits.  Id.  The DMD would review the drawings to determine whether the design was sufficient to remedy the immediate danger.  When the design was approved and all the required permit reviews completed, the appropriate permits would be issued.  Mr. Laughlin provided Mr. Smith with his contact information as well as the contact information for Mr. Chappell.  Id. ¶ 17.  There is no record of anyone ever having submitted any proposed plans or drawings to repair the Building.  Id. ¶ 19.

In an August 8, 2007 affidavit, Mr. Chappell testified in relevant part that he had conducted an exterior inspection of the Building and had observed that the roof of the concrete block addition was "sagging significantly and appeared to be in a state of collapse."  Affidavit of William Chappell ("Chappell Aff.") ¶ 6.  He further testified that

_____

[2] Mr. Smith maintains that, throughout the time period relevant to this litigation, he was Ms. Ramsey's "common law husband" and that he actually owns the Building, though he admits that the property was never officially conveyed to him.  Mr. Smith also contends that he was concerned about the condemnation proceedings because certain items of his property were in the Building at the time.  Smith Dep. at 9, 50.  In the Complaint, Plaintiffs allege that Mr. Smith recorded a mortgage on the property when it was purchased by Mr. Hendrix, and thus, that he (Smith) is a lien-holder.  Compl. ¶ 6.

an interior inspection would have been required to determine whether the roof on the
addition was structurally sound, but, because he was unable to gain access to the
Building, he could not conduct an interior inspection.  Id. ¶¶ 7-8.  On September 17,
2007, Nancie Cloe, the Unsafe Building and Nuisance Abatement Project Manager of the
DMD, averred by affidavit that "the structure at 1409 East Washington Street should be
considered part of the Unsafe Building program that is administered by the Department of
Metropolitan Development."  Affidavit of Nancie Cloe ("Cloe Aff.") ¶ 6.  Ms. Cloe also
testified that, though an interior inspection was necessary to determine the safety of the
Building, "the owner of the commercial building located at 1409 East Washington Street
has refused interior inspection of the structure."  Id. ¶¶ 7-8.

Mr. Chappell's and Ms. Cloe's affidavits were subsequently submitted to the
Marion Superior Court to secure an inspection warrant, and, on October 23, 2007, based
on the assertions contained in the affidavits, Judge Keele issued an inspection warrant,
which provided in relevant part:

> You are therefore AUTHORIZED and ORDERED, with the necessary and
> proper assistance, to enter into the interior of the building located at 1409
> East Washington Street, Indianapolis, Indiana; and there to diligently
> inspect the interior to determine if the following described structure is in an
> impaired structural condition that makes it unsafe to a person or property, to
> wit: the interior of the concrete block addition of the building located at
> 1409 East Washington Street, Indianapolis, Indiana.

Def.'s Ex F (Inspection Warrant).  The following day, on October 24, 2007, the warrant
was executed on the property, and representatives of the DMD and DPW, along with
individuals from the Indianapolis Fire Department and the Indianapolis Metropolitan

4

Police Department, entered the Building through the rear addition.  Upon entering the

Building, DPD employee Duane Ingram observed that the roof was collapsing in the rear

portion of the building, that there was trash on the floor, and that the floors underneath the

trash were crumbling.  Affidavit of Duane Ingram ¶ 12.  According to Mr. Ingram, once

they had entered the rear addition of the Building, the entire interior of the Building was

in plain view and from this vantage they observed that more portions of the building,

beyond merely the cement block addition, were substantially damaged.  The main portion

of the Building contained falling ceilings, a collapsing staircase, exposed wires, holes in

the floors, holes in the ceilings and other structural deficiencies evidencing widespread

dilapidation.  Id. ¶¶ 13-14; Def.'s Ex. C (Photographs).

Following the interior inspection, the property was declared a hazard and, on

December 4, 2007, the DMD issued an Order to Demolish the entire structure to the

property owner, Ms. Ramsey.  The Order was recorded in the Marion County Recorder's

Office on December 19, 2007, and stated in pertinent part:

> A recent inspection of the above described real estate revealed it to be
> structurally dangerous and to warrant demolition in accordance with the
> unsafe building law IC 36-7-9-4 Et Seq.  You are hereby ordered to
> demolish the structure by January 9, 2008.  If compliance with this order
> has not been achieved by the specified date the Division of Community
> Development and Financial Services of the Department of Metropolitan
> Development will take further Enforcement action.

Def.'s Ex. H (Order to Demolish).  The Order also set a date, time, and place for an

administrative hearing, open to the public, to wit, 9:30 a.m. on January 9, 2008, at the

Vacant Building Enforcement Office located at 3838 North Rural Street, Indianapolis,

Indiana.  Id.  The Order to Demolish further provided:

> The hearing shall be held before the Director of the Department of
> Metropolitan Development or his representative to give the person to whom
> the order was issued or his/her legal counsel an opportunity to present
> evidence, cross examine witnesses and make arguments.  At the conclusion
> of this hearing, if the Director or his representative determines that this
> order is appropriate and that there has been willful failure to comply with
> his order, a fine in an amount not exceeding $5,000 may be assessed.  If you
> or your representative does not appear, the matter will be determined in
> your absence and a fine could be imposed.

Id.

Although Plaintiffs maintain that they were not served with the Order or otherwise

given notice of the administrative hearing, Defendant rejoins that Ms. Ramsey was in fact

given notice on four separate occasions.  Defendant details that the first notice was sent to

Ms. Ramsey on December 11, 2007, via First Class U.S. Mail, to 3789 E. Pleasant Run

Parkway N., Indianapolis, IN 46201.  That address was utilized because the most recent

tax records on file for 1409 East Washington Street directed that correspondence related

to that property be sent to the Pleasant Run Parkway address.  Tim McMillan, the Unsafe

Building Program Manager, certified that the December 11th letter was not returned to

the sender; however, Plaintiffs submitted a copy of an envelope, postmarked December

11, 2007, with the return address of the Department of Housing and Neighborhood

Health, marked at the bottom: "RETURN TO SENDER UNCLAIMED UNABLE TO

FORWARD."  Pls.' Exh. 3.  The contents of that letter are unknown.  In any event, on

December 12, 2007, a second notice, identical to the first, was hand-delivered to the same

address.  Finally, on two separate occasions, notice was also published in the Indianapolis

Star newspaper directed to "[a]ny person or corporation claiming any title, right or interest" in the property located at 1409 East Washington Street.  The notices appeared in the newspaper on December 29, 2007 and January 5, 2008.

On January 9, 2008, the administrative hearing was conducted by the DMD, and neither Ms. Ramsey nor Mr. Smith attended.  Ingram Aff. ¶ 20.  Based on the evidence adduced at the hearing, the hearing authority affirmed the December 4, 2007 Order to Demolish.

More than one month after the hearing, on February 15, 2008, attorney Patrick Stern entered his appearance on behalf of Ms. Ramsey and Mr. Smith and filed a complaint in Marion Superior Court seeking judicial review of the demolition decision, alleging that his clients did not receive proper notice of the action.  Def.'s Ex. M (Compl. for Judicial Review).  The DMD filed a motion to dismiss the complaint, and a hearing was set by the court to consider the motion to dismiss on May 7, 2008.  At the May 7th hearing, it was revealed that Ms. Ramsey no longer owned the property, having conveyed the Building via quitclaim deed a month earlier, on April 8, 2008, to Plaintiff James Hendrix.  See Def.'s Ex. X (Quit Claim Deed).  Mr. Hendrix was Mr. Stern's paralegal, charged with performing such duties as electronically filing documents in federal court and completing any other projects assigned to him by Mr. Stern.[3]  Mr. Hendrix testified

_____

[3] In light of the employment relationship between Attorney Stern and Mr. Hendrix, this arrangement by which Mr. Hendrix acquired the property from Attorney Stern's client, Ms. Ramsey, raises serious concerns for the Court.  Rule 1.8 of the Indiana Rules of Professional Conduct provides in relevant part that, subject to certain exceptions, a lawyer "shall not enter into a business transaction with a client," (Rule 1.8(a)), and "shall not acquire a proprietary

by deposition in the case before us that he was aware of the proceedings against Ms.

Ramsey and the Order to Demolish at the time he received title to the property.

Deposition of James Hendrix ("Hendrix Dep.") at 28.

Mr. Hendrix, though physically present at the May 7th hearing, did not intervene

or oppose the ALJ's decision. With no opposition to the ALJ's decision, on May 16,

2008, the court upheld the Order to Demolish, further ruling that Ms. Ramsey lacked

standing to challenge the Order because she no longer owned the property. Def.'s Ex. U.

One week later, on May 22, 2008, Mr. Hendrix, acting by and through attorney Patrick

Stern, filed a Motion to Intervene in an attempt to stop the demolition. Def.'s Ex. O. The

Marion Superior Court ruled this motion untimely, given Hendrix's delay of some six

weeks after the time he allegedly purchased the property before he asserted his rights.

Def.'s Ex. P. Pursuant to the Order to Demolish, the Building was destroyed during July

2008.

Plaintiffs thereafter filed a notice of tort claim with the City of Indianapolis, which

was also denied. That notice of tort claim did not make its way into the record before us

and there is no evidence as well that Plaintiffs pursued their state court claims beyond that

denial. On January 8, 2009, Plaintiffs filed this § 1983 action in Marion Superior Court

---

interest in the cause of action or subject matter of litigation the lawyer is conducting for a
client." Rule 1.8(i). Because the exact details regarding the purchase arrangement and Mr.
Stern's level of involvement in the transaction are not clear from the facts in the record, we do
not address this issue further. However, because the arrangement does raise a  red flag, we will
forward this opinion to the Indiana Supreme Court Disciplinary Commission for its review and
further investigation, as appropriate.

and, on January, 30, 2009, it was removed to our court.

## Legal Analysis

### I.      Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>See</u> <u>id.</u> at 255. However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u>, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.      Plaintiff James Smith

What protectable property interest, if any, James Smith had in this property

remains entirely undeveloped and unclear in the record before us.  If his interest was

derived of his "common law marriage" to Ms. Ramsey, there is no showing to that effect,

quite apart from the fact that Indiana law does not recognize common law marriages.

Vaughn v. State, 782 N.E.2d 417, 421 n.6 (Ind. Ct. App. 2003) (citing IND. CODE § 31-

11-8-5).  If his interest arose from his alleged ownership of personal property present at or

contained in the demolished building, the Complaint fails to so allege and no specific

claim has ever been advanced to that effect.  If it was his status as a lien-holder with a

mortgage on the property following Mr. Hendrix's purchase, this theory is also utterly

undeveloped throughout the briefing.  It is well-established under Seventh Circuit law

that "unsupported and undeveloped arguments are waived."  United States v. Turcotte,

405 F.3d 515, 536 (7th Cir. 2005).  Plaintiff James Smith is therefore DISMISSED from

this action and we shall proceed with our analysis only of Plaintiff Hendrix's claims.


## III.     Takings Claim

In his complaint, Mr. Hendrix alleges that his rights guaranteed by the Fifth and

Fourteenth Amendments to the United States Constitution were violated as a result of the

actions taken by the Defendant to condemn and destroy his property at 1409 East

Washington Street in Indianapolis, Indiana.  Specifically, Mr. Hendrix contends that

Defendants' actions constituted a taking of his property without compensation, in

violation of his rights guaranteed by the Fifth Amendment, as applied to the states through the Fourteenth Amendment.

Defendant maintains that even if Plaintiff's claim had merit, the Court lacks jurisdiction at to decide that claim because it is not yet ripe.  Defendant specifically avers that Plaintiff cannot yet assert a takings claim because he has not yet exhausted the available state procedures for relief as mandated by the decision of the Supreme Court in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County, 473 U.S. 172 (1985).[4]

Under the Takings Clause of the Fifth Amendment, "[n]o constitutional violation occurs until just compensation has been denied."  Williamson County, 473 U.S. at 195 n.13.  In other words, "a federal takings claim is not ripe until it is apparent that the state does not intend to pay compensation."  Estate of Himelstein v. City of Fort Wayne, Ind., 898 F.2d 573, 576 (7th Cir. 1990).  Furthermore, "[u]nder Williamson County, federal courts are barred from adjudicating federal takings claims until the plaintiff has demonstrated (1) that he or she received a final decision from the relevant government entity, and (2) that he or she has sought compensation through the procedures the State has provided for doing so."  Lewis v. City of Jeffersonville, Ind., 2004 WL 1629741, at

---

[4] Normally when a plaintiff brings a claim under 42 U.S.C. § 1983, as Mr. Hendrix has, he is not required to exhaust all state remedies.  See Patsy v. Board of Regents, 457 U.S. 496, 516 (1982).  However, "the additional ripeness requirements of Williamson County create a takings claim exception to Patsy's general requirement that exhaustion is not required in § 1983 suits.  Therefore, litigants . . . who assert a takings claim under 42 U.S.C. § 1983 may not rely solely on Patsy, but must meet the Court imposed requirements of Willamson County prior to bringing a federal claim."  Peters v. Village of Clifton, 498 F.3d 727, 729 n.4 (7th Cir. 2007).

*4 (S.D. Ind. July 6, 2004) (citing <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 372 (7th

Cir. 2000).

In order to determine whether Mr. Hendrix has successfully exhausted the

available state procedures before filing the instant lawsuit, we turn first to the Indiana

Code.  Section 36-7-9-8 provides an appeal process to challenge orders issued under the

unsafe building laws.  It states in pertinent part that:

> (a) An action taken under section 7(d) or 7(e) of this chapter is subject to
> review by the circuit or superior court of this county in which the unsafe
> premises are located, on request of: (1) any person who has a substantial
> property interest in the unsafe premise; or (2) any person to whom that
> order was issued.
>
> (b) A person requesting judicial review under this section must file a
> verified complaint including the findings of fact and the action taken by the
> hearing authority.  The complaint must be filed within ten (10) days after
> the date when the action was taken.

IND. CODE § 36-7-9-8.

In the case at bar, Mr. Hendrix entirely failed to timely avail himself of this appeal

process.  Although Ms. Ramsey and Mr. Smith did file a Motion for Judicial Review

following the hearing at which the Building was ordered destroyed, that Motion was not

filed until thirty-seven (37) days after the hearing.  It is also undisputed that Ms. Ramsey

did not own the property at the time of the judicial review hearing.  Thus, not only did

Ms. Ramsey and Smith fail to meet the ten-day requirement set forth by the Indiana Code,

but the court also found Ms. Ramsey lacked standing to challenge the order at all because

by date of the hearing she was no longer an owner of the property.  Plaintiff Hendrix, who

13

apparently did own the property at the time of the hearing and was in attendance at the

hearing, nonetheless did not attempt to intervene at that time.  Instead, he waited until

fifteen (15) days after the hearing before filing a Motion to Intervene.  (Def.'s Ex. O).

The court ruled that his motion was untimely in light of his failure to raise the issue at the

May 7, 2008 hearing and because he had waited six weeks after taking possession of the

property to assert his rights despite having knowledge about the condemnation and

demolition proceedings at the time he assumed ownership.  (Def.'s Ex. W, Hendrix

Depo., 28:2-3).

       Nor did Mr. Hendrix pursue other avenues of recovery under Indiana law.

Although Plaintiff apparently did file a notice of tort claim against the City of

Indianapolis pursuant to Indiana Code § 34-13-3-8, but once that claim was denied, he

took no further action.  Plaintiff claims that the denial of his tort claim is sufficient

exhaustion of the state's procedures for recovery.  Analysis of the Indiana Code shows

that this is not so.  Section 34-13-3-13 clearly states that the denial of a claim is the

prerequisite to a suit against the state.  Specifically, it reads, "A person may not initiate a

suit against a governmental entity unless a person's claim has been denied in whole or in

part."  IND. CODE § 34-13-3-13.  Thus, the notice of tort claim and its subsequent denial

do not constitute exhaustion of the state's procedures for compensation; those steps are

merely the prerequisite to bringing a suit against the state.  In order to completely exhaust

all possible remedies allowed by state procedures, Plaintiff must seek just compensation

by pursuing an inverse condemnation action in state court or show that the state inverse

condemnation procedure was unavailable or inadequate before initiating claims pursuant to § 1983.  Indiana provides a state-law cause of action for inverse condemnation (see Ind. Code § 32-24-1-16), and Plaintiff does not allege that such an action was either unavailable or inadequate in his case.  Because Mr. Hendrix has failed to establish that he exhausted all possible remedial procedures provided by the state before filing the instant lawsuit, Plaintiff's takings claim is not properly before this Court and cannot support a granting of relief in his favor.

## IV.    Due Process Claims

Based on the same facts underlying his takings claim, Mr. Hendrix alleges that Defendant deprived him of his property without providing procedural and substantive due process.  It is well-established under Seventh Circuit law that the "Williamson County exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim."  Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004) (citations omitted); see also Forseth, 199 F.3d at 370 (holding that a substantive due process claim which "falls within the framework for takings claims" is subject to Williamson County's exhaustion requirement); River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994) (holding that "a person contending that state or local regulation of the use of land has gone overboard must repair to state court," regardless of how the claim has been labeled by a plaintiff). Because the facts underlying Mr. Hendrix's due process claims are the same as those

15

underlying his takings claim, the exhaustion analysis applies equally to them.  Mr. Hendrix's due process claims, based on the same analysis applicable to the takings claim, are not properly before this Court.  Even if Mr. Hendrix properly pled due process claims distinct from his takings theory, those claims would still fail for the reasons detailed below.

In order to establish a procedural due process claim, Plaintiff must show that his property was taken away without notice and the opportunity for a hearing at which he could have attempted to contest the deprivation.  Ellis v. Sheahan, 412 F.3d 754, 756 (7th Cir. 2005).  It is undisputed that Ms. Ramsey, not Mr. Hendrix, was the property owner at the time the Order to Demolish was originally issued.  Mr. Hendrix appears to argue that, because Ms. Ramsey allegedly did not receive proper notice of the Order to Demolish, he likewise was affected by that failure.  We find this argument unpersuasive.   To begin with, the facts adduced from the record show that Defendant attempted to provide notice to Ms. Ramsey on four separate occasions.  First, the DMD mailed the Order to Demolish and notice of the administrative hearing to the address that was listed for the subject property on the then most recent tax records.  The second notice was hand delivered to that same address.  The notice was also published twice in the Indianapolis Star, on December 29, 2007 and January 5, 2008.  All of the notices provided a place and a time for the hearing at which there would be an opportunity to challenge the order.

Plaintiff Hendrix maintains that the first notice sent to Ms. Ramsey was returned to sender and in support of that contention submitted an envelope postmarked December 11,

2007 (the same date Defendant contends the notice was sent) with the return address of

the Department of Housing and Neighborhood Health, marked "RETURN TO SENDER

UNCLAIMED UNABLE TO FORWARD."  See Docket No. 36.  However, even if that

notice was returned, it is well-established that "[d]ue process does not require that a

property owner receive actual notice before the government may take his property.

Rather, . . . due process requires the government to provide 'notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections.'" Jones v. Flowers, 547 U.S. 220,

226 (2006) (citations omitted).  Assuming that the original notice was in fact returned to

sender,[5] Defendant would then have been required to take "additional reasonable steps to

notify [the property owner], if practicable to do so."  Id. at 234.  Here, Defendant did so

by subsequently hand delivering the notice as well as twice publishing the notice in the

Indianapolis Star.  We see no deficiencies in these efforts to provide notice to Ms.

Ramsey.

Nor did Defendant directly violate Mr. Hendrix's procedural due process rights.

Mr. Hendrix himself testified by deposition that, at the time he acquired the subject

property, he was aware that the Order to Demolish had already issued.  Moreover, he

---

[5] Tim McMillan, the records custodian for the Marion County Health Department's
Department of Housing and Neighborhood Health, certified that notice was sent by First Class
U.S. Mail to 3786 E. Pleasant Run Parkway N Drive, Indianapolis, IN, 46201, on December 11,
2007.  He further certified that, if a piece of mail is returned, it is the normal practice of the
Department to place the returned envelope in the appropriate file, but after a search of the
records, the Department determined it is not in possession of the above piece of returned mail.

subsequently attended a judicial hearing at which he could have interposed his opposition or objections to the Order, but he failed to do so.  In short, despite having both notice of the Order and an opportunity to be heard, Mr. Hendrix sat mute.  On these facts, Hendrix appears to have forfeited his rights by his silence, but in any event we cannot find that Defendant deprived Mr. Hendrix of his property without providing procedural due process.[6]

## V.   Fourth Amendment Trespass Claim

In his Complaint, Mr. Hendrix recites only that Defendant trespassed upon his property without a valid court order.  Compl. at 4.  In his response to Defendant's Motion for Summary Judgment, Mr. Hendrix states, for the first time, that such action constitutes a violation of his Fourth Amendment rights.  Defendant argues that this claim was not included in Plaintiff's Complaint, and Defendant therefore did not address a Fourth

---

[6] In his Complaint, Mr. Hendrix also alleged that his substantive due process rights were violated as a result of the deprivation of his property.  Pls.' Compl. at 1 ("The city violated plaintiff [sic] right to substantive due process when seizing the building and the contents therein because the City's action constitutes a taking without compensation.").  In his response brief in opposition to the instant motion, Plaintiff failed to address this claim in any substantive manner, and thus, we deem it waived.  Even if Mr. Hendrix had not waived this claim, however, it would nonetheless fail on the merits.  Under well-established Seventh Circuit law, "a plaintiff bringing a substantive due process claim predicated on a deprived property interest must show 1) that the state's decision was arbitrary and irrational, and 2) that the state committed a separate constitutional violation or that state law remedies are inadequate."  Contreras v. City of Chicago, 119 F.3d 1286, 1295 (7th Cir. 1997) (citations omitted).  Upon careful review of the undisputed facts before us, we cannot find that Plaintiff has made any showing that Defendant's actions were arbitrary or irrational, nor has Plaintiff attempted to show that state law remedies are inadequate.  Accordingly, Mr. Hendrix's substantive due process claim fails.

18

Amendment claim in its Motion for Summary Judgment.  Even if we assume for purposes of this motion that Plaintiff's Fourth Amendment claim is properly before us, we find that it nonetheless fails on the merits.

In his response brief, Mr. Hendrix contends that "City building inspectors on private property without a warrant, court order, or consent of the owner violates the Fourth Amendment."  Pls.' Reply Br. at 10.  Initially, we note that Mr. Hendrix did not purchase the property until April 8, 2008, so he does not have standing to bring a trespass claim based on actions taken by Defendant before that date.  Regardless, the undisputed facts before the Court establish that the City did obtain a judicially-issued warrant prior to conducting an administrative search of the Building, and it is well-established that administrative searches may be conducted on the basis of a valid warrant.  Montville v. Lewis, 87 F.3d 900, 902 (7th Cir. 1996).  Moreover, "an administrative search does not require the same kind of 'probable cause' required for a criminal search."  Id. at 903 (citing O'Connor v. Ortega, 480 U.S. 709, 722-23 (1987)).  An administrative warrant is available "if there is a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied."  Id. at 902 (quoting 480 U.S. at 723).  As discussed above, Judge Keefe of the Marion Superior Court issued an inspection warrant for the Building after reviewing the affidavits submitted by Mr. Chappell and Ms. Cloe attesting to the unsafe nature of the Building based on their inspection of its exterior. Nothing about this process gives rise to any questions or concerns regarding the validity of the warrant that authorized an interior inspection of the Building.

19

After executing the search warrant on the property, the DMD declared the Building a hazard and, on December 4, 2007, issued an Order to Demolish, which order was recorded in the Marion County Recorder's Office on December 19, 2007.  On January 9, 2008, an administrative hearing was conducted by the DMD on the basis of which the hearing officer affirmed the Order to Demolish.  Pursuant to Indiana Code § 36-7-9 *et seq*., administrative bodies are empowered to enforce Indiana's laws regarding unsafe buildings and are authorized to issue and affirm orders to demolish.  See IND. CODE § 36-7-9-7.  Only after an appeal is taken of an order to demolish does a court review the process.  IND. CODE § 36-7-9-8.  As discussed above, neither Plaintiffs nor Ms. Ramsey appeared at the January 9th administrative hearing to challenge the Order to Demolish.  There was no basis therefore for judicial review of the Order.  No evidence before the Court would conceivably establish that either the initially authorized inspection warrant or the Order to Demolish was invalid.  Accordingly, Plaintiff's Fourth Amendment trespass claim fails.

## VI.     State Law Claims Brought Pursuant to the Indiana Constitution

Mr. Hendrix's final allegation is that his right to be free of illegal search and seizure, as guaranteed by Article I, Section 11 of the Indiana Constitution, has been violated.  Plaintiff Hendrix also asserts a violation of Article I, Section 21 of the Indiana Constitution, which provides in relevant part that "no person's property shall be taken by law, without just compensation."  IND. CONST. art. I, § 21.  Defendant contends that Plaintiff's claims for damages brought pursuant to the Indiana Constitution are subject to

20

dismissal because no cause of action for monetary damages exists for violations of rights guaranteed by the Indiana Constitution.

The Indiana Supreme Court has recognized that "[t]here is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights." Cantrell v. Morris, 849 N.E.2d 488, 499 (Ind. 2006); accord Smith v. Ind. Dep't. of Corr., 871 N.E.2d 975, 985 (Ind. Ct. App. 2007) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution."). Moreover, our court has expressly held that any claim alleging a violation of Article I, Section 11 of the Indiana Constitution is limited to injunctive relief. Baker v. Washington Bd. of Works, 2000 WL 33252101, at *8 (S.D. Ind. June 8, 2000) (applying Indiana law). We thus decline to recognize an implied right of action for damages under the Indiana Constitution. Given that Plaintiff seeks no equitable relief based on his state constitutional claims, we GRANT Defendant's Motion for Summary Judgment as to Plaintiff's Indiana Constitutional claims.

## VII.   Conclusion

For the reasons detailed above, we GRANT Defendant's Motion for Summary Judgment in its entirety. Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____09/02/2010_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

Patrick  Stern
jimi@jameshendrix.info

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org